# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

## 17-30884

_____

## UNITED STATES OF AMERICA,

Plaintiff-Appellee

**v.**

## CHRISTOPHER DOUGLAS,

Defendant-Appellant

---

## -  Consolidated With 17-30890  -

---

## UNITED STATES OF AMERICA,

Plaintiff-Appellee

**v.**

## CHRISTOPHER L. DOUGLAS,

Defendant-Appellant

Appeal from the United States District Court for the
Western District of Louisiana
CRIMINAL NUMBERS 5:17-CR-70-1 and 5:16-CR-157-1

_____

## BRIEF ON BEHALF OF APPELLEE,
## THE UNITED STATES OF AMERICA

_____

ALEXANDER C. VAN HOOK
United States Attorney
Western District of Louisiana

CAMILLE A. DOMINGUE (#20168)
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501, (337) 262-6618
Attorneys for Plaintiff-Appellee

## STATEMENT REGARDING ORAL ARGUMENT

These consolidated appeals present one issue raised for the first time regarding the substantive reasonableness of two separately-imposed sentences.  The United States agrees with the defendant that oral argument would not assist the Court in this matter.

# TABLE OF CONTENTS

**PAGES**

STATEMENT REGARDING ORAL ARGUMENT ...................................i

TABLE OF AUTHORITIES....................................................v

STATEMENT OF JURISDICTION .........................................1

ISSUE ON APPEAL.............................................................2

STATEMENT OF THE CASE ...............................................3

 *The Kidnaping Conduct* .................................................3

 *The Drug Conduct* .........................................................7

 *Other Criminal Conduct* ................................................8

 *Indictment and Guilty Plea* ...........................................8

 *The Pre-Sentence Investigation Reports (PSRs)* ...........9

  1. *The Kidnaping Conduct*...............................10

  2. *The Drug Conduct*......................................11

 *Sentencing* ...................................................................13

SUMMARY OF THE ARGUMENT .......................................17

ARGUMENT ......................................................................19

## TABLE OF CONTENTS *(continued)*

**PAGES**

I.   Douglas' challenge to the substantive reasonableness of his 324-month sentence on the kidnaping charge is barred by the waiver provision in his plea agreement. Alternatively, particularly in light of the applicable plain error standard of review, the defendant has not rebutted the appellate presumption of reasonableness applicable to either of his within-guideline sentences on appeal.   Further, the district court's decision to order that he serve those sentences partially consecutively is reasonable under the plain error standard ................................................................................ 19

A.   Standard of Review ...................................................... 19

B.   Applicable Substantive Law ........................................ 20

   1.   *Appeal waiver* ...................................................... 20

   2.   *Substantive reasonableness* ................................ 21

   3.   *Consecutive versus concurrent sentences* ........... 22

C.   Application of the Law to the Record ......................... 23

   1.   *Appellate waiver* .................................................. 24

   2.   *The reasonableness of the within-guideline sentences* ............................................................. 25

   3.   *Decision to impose partially consecutive sentences* ............................................................. 30

iii

# TABLE OF CONTENTS *(continued)*

**PAGES**

CONCLUSION ........................................................................ 35

CERTIFICATE OF SERVICE and
    COMPLIANCE WITH ECF FILING STANDARDS ...................... 36

CERTIFICATE OF COMPLIANCE......................................................... 37

# TABLE OF AUTHORITIES

**PAGES**

## FEDERAL CASES

*Cinel v. Connick,*
   15 F.3d 1338 (5th Cir. 1994) ................................................. 26, 33

*Gall v. United States,*
   552 U.S. 38 (2007) ................................................................. 34-35

*Puckett v. United States,*
   556 U.S. 129 (2009) ...................................................................... 20

*Richardson v. Henry,*
   92 F.2d 414 (5th Cir. 1990) .......................................................... 24

*Rita v. United States,*
   551 U.S. 338 (2007) ................................................................. 27-28

*Setser v. United States,*
   566 U.S. 231 (2012) ...................................................................... 22

*United States v. Alvarado,*
   691 F.3d 592 (5th Cir. 2012) ........................................................ 29

*United States v. Bond,*
   414 F.3d 542 (5th Cir. 2005) .............................................. 20, 24-25

*United States v. Booker,*
   543 U.S. 220 (2005) ...................................................................... 21

*United States v. Campos-Maldonado,*
   531 F.3d 337 (5th Cir. 2008) ........................................................ 21

## TABLE OF AUTHORITIES *(continued)*

**PAGES**

*United States v. Cooks,*
　589 F.3d 173 (5th Cir. 2009) ...................................................... 22

*United States v. Diehl,*
　775 F.3d 714 (5th Cir. 2015) ...................................................... 19

*United States v. Farjado,*
　469 F. App'x 393 (5th Cir. 2012) ................................................ 34

*United States v. Freeman,*
　710 F. App'x 193 (5th Cir. 2018) ........................................... 33-34

*United States v. Garnica,*
　471 F. App'x 368 (5th Cir. 2012) ................................................ 34

*United States v. Heard,*
　709 F.3d 413 (5th Cir. 2013) ...................................................... 20

*United States v. Herula,*
　464 F.3d 1132 (10th Cir. 2006) .................................................. 32

*United States v. Medlock,*
　619 F. App'x 386 (5th Cir. 2015) ........................................... 31-32

*United States v. Olivares-Martinez,*
　767 F.2d 1135 (5th Cir. 1985) .................................................... 33

*United States v. Powell,*
　574 F. App'x 390 (5th Cir. 2014) ................................................ 21

*United States v. Rodriguez,*
　521 Fed. App'x 313 (5th Cir. 2013) ........................................... 28

vi

# TABLE OF AUTHORITIES *(continued)*

**PAGES**

*United States v. Ronquillo,*
   508 F.3d 744 (5th Cir. 2007) ................................................. 23, 31

*United States v. Sanchez,*
   667 F.3d 555 (5th Cir. 2012) ....................................................... 28

## FEDERAL STATUTES

18 U.S.C. § 922(g)(1) .................................................................... 8

18 U.S.C. § 1201(a) ...................................................................... 9

18 U.S.C. § 1201(a)(1) ............................................................... 10

18 U.S.C. § 1201(c) ...................................................................... 9

18 U.S.C. § 3231 ........................................................................... 1

18 U.S.C. § 3553(a) ............................................. 13, 19, 21-22, 28-29, 34

18 U.S.C. § 3553(a)(1) ................................................... 18, 21, 33

18 U.S.C. § 3584(a) .................................................................... 22

18 U.S.C. § 3584(b) .................................................................... 22

18 U.S.C. § 3742(a) ...................................................................... 1

21 U.S.C. § 841(a)(1) .................................................................... 8

28 U.S.C. § 1291 ........................................................................... 1

**TABLE OF AUTHORITIES** *(continued)*

**PAGES**

<u>U. S. SENTENCING GUIDELINES</u>

U.S.S.G. § 2A4.1 ...................................................................... 10

U.S.S.G. § 2A4.1(b)(2)(B) ....................................................... 10

U.S.S.G. § 2A4.1(b)(3) ............................................................ 10

U.S.S.G. § 2D1.1(c)(8) ............................................................ 11

U.S.S.G. § 2D1.2, Application Note 1 ..................................... 32

U.S.S.G. § 2X1.1 ..................................................................... 10

U.S.S.G. § 3D1.1 ..................................................................... 26

U.S.S.G. § 3D1.4 ..................................................................... 26

U.S.S.G. § 4B1.1 ..................................................................... 10

U.S.S.G. § 4B1.1(b) ........................................................... 10, 12

U.S.S.G. § 5G1.2 ..................................................................... 32

U.S.S.G. § 5G1.2(c) ................................................................ 32

U.S.S.G. § 5G1.3 ............................................................... 22, 33

U.S.S.G. § 5G1.3(d) ................................................................ 33

U.S.S.G. § 5G1.3, Application Note 4(C)........................... 22, 31

U.S.S.G. § 5G1.3, Application Note 4(D) ............................... 33

# TABLE OF AUTHORITIES *(continued)*

**PAGES**

<u>FEDERAL RULES OF APPELLATE PROCEDURE</u>

Fed. R. App. P. 4(b)(1)(A) ........................................................................ 1

# STATEMENT OF JURISDICTION

The defendant appeals from judgments of conviction entered by the district court in two separate criminal prosecutions, one originating in the Eastern District of Texas (Fifth Circuit No. 17-30884), and one originating in the Western District of Louisiana (Fifth Circuit No. 17-30890). Both matters were adjudicated in the Western District of Louisiana after the defendant and the United States consented to a transfer of the Eastern District of Texas charges. ROA.17-30884.5. The district court had subject matter jurisdiction under 18 U.S.C. § 3231. Judgment in each case was entered on October 26, 2017, rendering Douglas' separate notices of appeal, both filed on November 7, 2017, timely. ROA.17-30884.18, 17-30890.35. Fed. R. App. P. 4(b)(1)(A). The United States Court of Appeals for the Fifth Circuit exercises jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

# ISSUE ON APPEAL

I. Is the defendant's appeal of his 324-month sentence of imprisonment imposed on his conviction for conspiracy to commit kidnaping barred by the appeal waiver in his plea agreement?  Even if it is not, has he rebutted the presumption that that sentence, and the 192-month sentence of imprisonment imposed on his conviction for distribution of 5 grams or more of methamphetamine, are substantively reasonable?  Is the district court's decision to order that he serve the 192-month sentence partially consecutively to the 324-month sentence, and fully consecutively to an anticipated state revocation sentence, substantively reasonable under the plain error standard of review?

## STATEMENT OF THE CASE

These consolidated appeals address sentences imposed in two separate criminal prosecutions—one initiated in the Eastern District of Texas that concerned a kidnaping conspiracy ("the kidnaping charge" or "the kidnaping conduct"), and one initiated in the Western District of Louisiana that concerning drug trafficking activity ("the drug charge" or "the drug conduct").  The defendant consented to transfer to the Western District of Louisiana the charges addressing the kidnaping conduct, and the defendant was sentenced on both cases by the same district judge in the same proceeding.

### *The Kidnaping Conduct*

Between approximately June 1, 2014, and January 1, 2016, Christopher Douglas was a member of a criminal organization headed by Cory Mitchell.  Mitchell's group targeted for various acts of violence individuals who were involved, or who the group members believed were involved, in drug trafficking.  They did so because they believed those individuals likely possessed large quantities of cash or drugs, and that they were unlikely to report crimes committed against them to law enforcement.  ROA.17-30884.67-68.

On or around the evening of March 25, 2015, Mitchell, Douglas, and another group member named Montonious Robinson assaulted and kidnaped QB, a known drug dealer, from a residence in Longview, Texas. Douglas and the other two men tied QB up and put him in the trunk of his own vehicle, but he later managed to escape. The vehicle, a silver Lincoln MKS, was found shortly thereafter in DeSoto Parish, Louisiana, burned. ROA.17-30884.68.

Just after midnight on March 26, 2015, a Carthage, Texas police officer on routine patrol spotted QB lying in the middle of the road, covered in blood. The officer noted QB had been badly beaten, and his arms were tied behind his back. When interviewed later, QB stated he had been called by a woman named Kareshia Jones, who invited him to her house in Longview. When he arrived, she told him to go into her bedroom; when he emerged from the bedroom, several black men beat him with a hammer, tied him up using zip ties and duct tape, and threatened to shoot him. QB recounted how the men had taken $600 from his wallet and demanded a large sum of money from him. He heard one of his assailants call another one "Mon," and he also heard one of

them say they would have to "kill that bitch."  QB believed the men were going to kill him.  ROA.17-30884.69.

According to QB, his assailants then loaded him into the trunk of his own vehicle, which someone had moved under the carport of Jones' residence.  QB explained that he had tried to pull the internal trunk release several times in an attempt to escape while the men were driving away with him; each time he did so, however, they stopped the car and beat him.  QB's final escape attempt was successful, and that is how he ended up in the middle of the road in Carthage.  ROA.17-30884.69.

The next day, detectives investigating the kidnaping executed a search warrant at Jones' residence in Longview.  They observed a large amount of blood on the carpet of Jones' master bedroom, as well as blood spatter in the hallway.  Detectives also located a blue cellular telephone on the master bedroom dresser; Jones denied any knowledge of that telephone.  ROA.17-30884.69.

Detectives later searched the cellular telephone pursuant to a warrant.  That search revealed photographs of Robinson, as well as text messages between Robinson and Douglas exchanged prior to QB's kidnaping.  The search also produced text messages between Robinson

and unidentified parties on the day of the kidnaping; in those messages, Robinson advised he was holding someone for ransom. He stated they were waiting on the victim's wife to bring the money, and that afterward, "she gone [*sic*] die too." ROA.17-30884.69.

On June 1, 2017, Longview detectives were contacted by investigators with the DeSoto Parish Sheriff's Office ("DPSO") in Mansfield, Louisiana. The DPSO investigators reported that during the execution of a narcotics search warrant at Robinson's home, they had recovered a cellular telephone. The telephone contained text messages between Robinson and third parties in which Robinson had stated he was wanted for murder, and that he was guilty. In those messages, Robinson also admitted that he had left his cellular telephone at the crime scene, and that the police had recovered it. Subsequent investigation confirmed that Robinson had bought the telephone recovered by the DPSO a few days after the kidnaping, presumably to replace the one he had left behind at the Longview crime scene. ROA.17-30884.

DPSO investigators further advised the Longview detectives that they had interviewed a woman named Ashley McCoy, who claimed to have information regarding Robinson's involvement in QB's kidnaping.

The Longview detectives traveled to Mansfield and interviewed McCoy. According to McCoy, Robinson had admitted to her that he, Douglas, and Mitchell, with the assistance of Mitchell's girlfriend, Jones, had ambushed QB at Jones' residence. They had then called QB's wife, demanding a ransom. Robinson further told McCoy that they had put QB in the trunk of his own car, but QB had escaped. Robinson said they beat him and drove over him, leaving him for dead.   ROA.17-30884.

### *The Drug Conduct*

On April 26, 2016, a confidential informant, under the direction of the FBI and the Sabine Parish Sheriff's Office, purchased 37.49 grams of methamphetamine from Douglas in Many, Louisiana. Douglas charged the informant $2,000 for the drugs. ROA.17-30884.

On May 3, 2016, Douglas engaged in another transaction with a confidential informant. The informant similarly purchased 27.44 grams of methamphetamine for $1,500. That transaction also involved the purchase of a firearm, a Romanian WASR-10 AK-47 rifle with an extended magazine, for $800.[1]  ROA.17-30890.83.

---

[1] It is unclear from the phrasing in the PSR whether Douglas bought or sold the firearm as part of that transaction. That distinction was immaterial for purposes of the advisory guideline calculation.

### Other Criminal Conduct

In late December of 2015, Douglas also participated in the abduction of DH, the seven year-old son of HM, a well-known drug dealer in Zwolle, Louisiana.  On December 31, 2015, Douglas and Mitchell approached DH while he was in his front yard.  They offered DH some fireworks and convinced him to accompany them to get some more.  DH got into a vehicle with Douglas, Mitchell, and a female.  Later, Mitchell contacted HM and told him they had his son; he threatened to cut off one of the child's fingers every hour until their demand was met.  HM reported the incident to the Zwolle Police Department, and Mitchell and Douglas eventually dropped the boy off, unharmed, at a random residence in Center, Texas.  ROA.17-30884.72.

### Indictment and Guilty Plea

On June 22, 2016, Douglas was charged by Indictment in the Western District of Louisiana with two counts of distribution of 5 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Counts 1 and 2), and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 3).  ROA.17-30890.7-8. On September 21, 2016, the defendant was charged by Superseding

8

Indictment in the Eastern District of Texas with, among other charges, conspiracy to commit kidnaping, in violation of 18 U.S.C. §§ 1201(a) and (c) (Count 6). ROA.17-30884.95-108.

On March 13, 2017, the defendant consented, in writing, to transfer of the kidnaping charge from the Eastern District of Texas to the Western District of Louisiana for plea and sentencing. ROA.17-30884.5. The Western District of Louisiana accepted transfer, and on April 6, 2017, the defendant pleaded guilty to Count 6 of the Eastern District of Texas Superseding Indictment (the kidnaping charge) and Count 1 of the Western District of Louisiana Indictment (the drug charge). ROA.17-30884.7, 17-30890.21. Douglas' plea agreement on the kidnaping charge contained an express waiver of his right to appeal, except he reserved the right to challenge a sentence in excess of a statutory maximum. ROA.17-30884.51.

### *The Pre-Sentence Investigation Reports (PSRs)*

Separate PSRs were prepared addressing the kidnaping conduct and the drug conduct.

### 1.  *The Kidnaping Conduct*

The PSR addressing the kidnaping conduct recommended a base offense level of 32, pursuant to U.S.S.G. §§ 2A4.1 and 2X1.1, the provisions that pertain to conspiracies to violate § 1201(a)(1).  To that value, two levels were added, pursuant to U.S.S.G. § 2A4.1(b)(2)(B), because the victim sustained serious bodily injury, and two additional levels were added, pursuant to U.S.S.G. § 2A4.1(b)(3), because a dangerous weapon (a hammer) was used, resulting in an adjusted offense subtotal of 36.  ROA.17-30884.71-72.

However, Douglas' extensive criminal history qualified him for sentencing as under the career offender provisions, U.S.S.G. § 4B1.1, et seq.  Because the offense of conviction carried a maximum penalty of life, his offense level was instead set at 37, pursuant to U.S.S.G. § 4B1.1(b).  Subtracting three levels for the defendant's timely acceptance of responsibility produced a total offense level of 34.  ROA.17-30884.71-72.

With regard to his criminal history, Douglas was assessed 18 points for 15 prior convictions.  Two additional points were added because he committed the instant offense while serving a sentence for a prior

conviction, resulting in 22 criminal history points and a Criminal History Category VI.[2]  ROA.17-30884.72-80.  Douglas' total offense level of 34 and his Criminal History Category VI correlated to an advisory range of 262-327 months on the kidnaping conduct.  ROA.17-30884.86.

The PSR identified one possible ground for upward departure:  that even his Category VI classification understated the nature and extent of his criminal record.  In support, the PSR noted that Douglas had five felony convictions and 10 misdemeanor convictions; that his record showed a pattern of escalating violence; and that his record included one probation revocation and three parole revocations.  ROA.17-30884.87-88.

Neither the United States nor the defendant filed any objections to the PSR issued on the kidnaping conduct.  ROA.17-30884.90.

## 2.    *The Drug Conduct*

The PSR addressing the drug conduct recommended a base offense level of 24, pursuant to U.S.S.G. § 2D1.1(c)(8), which is the level applicable to the 64.93 grams of methamphetamine for which Douglas was held accountable.  Douglas was assessed two additional levels

---

[2] Because Douglas was subject to the career offender provisions, he would have been a Category VI offender even without 20 criminal history points. ROA.17-30884.80.

11

because a firearm was possessed in connection with the offense, resulting in an adjusted offense level of 26. ROA.17-30890.84.

However, because Douglas qualified for sentencing as a career offender, and because the drug offense carried a statutory maximum of 40 years' imprisonment, he was assessed a higher base offense level of 34, pursuant to U.S.S.G. § 4B1.1(b). Subtracting three levels for his timely acceptance of responsibility produced a total offense level of 31. ROA.17-30890.84.

Douglas' criminal history calculation was the same for this offense as for the kidnaping offense—20 criminal history points and a Criminal History Category VI. ROA.17-30890.85-92. His offense level of 31 and Criminal History Category VI correlated to an advisory range of 188-235 months on the drug conduct. ROA.17-30890.98. The PSR similarly identified "criminal history inadequacy" as a possible ground for upward departure. ROA.17-30890.100.

Neither the defendant nor the United States filed any objections to the PSR issued on the drug conduct. ROA.17-30890.102.

*Sentencing*

Prior to sentencing, the defendant filed, under seal, a sentencing memorandum.  In it, he addressed his personal characteristics and the § 3553(a) factors, urging the court to impose a below-guidelines sentence in light of his remorse and his family ties, and to avoid disparity with respect to his co-defendants in the kidnaping case.  ROA.17-30890.114-25.

On October 11, 2017, the district court conducted a sentencing hearing addressing both cases.[3]  The court noted that as there were no objections to either PSR, the principal question at sentencing was whether the sentences for the two separate cases would be imposed concurrently or consecutively.  Though, as the court observed, the United States had recommended concurrent sentences, the guidelines recommended consecutive ones, and the court was not bound by any recommendation by any party.  ROA.17-30884.25-26.

The court then heard argument from defense counsel in mitigation of sentence, in which he noted the defendant's extensive criminal history

---

[3] Identical copies of the transcript of the sentencing hearing appear in both records on appeal.  Citation is to the copy appearing in case number 17-30884 only.

was likely the result of his lack of education and his drug addiction. Counsel further argued that the defendant's criminal history score overstated the seriousness of his criminal history, as some convictions were old. Counsel also referenced an earlier, off-the-record discussion in chambers concerning the sentences imposed on Douglas' co-defendants in the kidnaping case, noting that Douglas had played a lesser role in the kidnaping than Mitchell, who had been sentenced "somewhere from maybe 135 up to 168 months …." Finally, counsel addressed Douglas' family ties, referencing letters submitted by some of them in connection with sentencing. Counsel requested a sentence at the low end of the advisory range, and that the court impose concurrent sentences on the two counts of conviction. ROA. 17-30884.28-33. The court also listened to a personal allocution statement from the defendant, in which he also expressed his remorse. ROA.17-30084.37.

Prior to announcing Douglas' sentences on the two separate cases, the court specifically referenced his sentencing memorandum, as well as 15 letters from Douglas' family members it had received, noting it would consider those in sentencing him. ROA.17-30884.31, 36, 17-30890.126-59. As to the kidnaping conduct, the court sentenced Douglas to

324 months, near the high end of the 262-327 month range.   The court specifically addressed the issue of sentence disparity, noting that Douglas' co-conspirators in the kidnaping case all had significantly lower criminal history scores than Douglas did:   Mitchell was a Category I offender; Robinson and Cutwright were Category III offenders; and Newton was a Category II offender.   ROA.17-30884.38.

In contrast, said the court, Douglas was a Category VI offender who had amassed 20 criminal history points.   The court observed this record might justify an upward departure, but it had declined to do so in light of the fact that some of his convictions were less serious.   Even so, the court noted, Douglas' record included five felony convictions; the violent character of those offenses had escalated over time; and he had continued to engage in criminal activity even while on supervision, "indicating a disregard for the victims and for the law itself."   The court ordered Douglas to serve that sentence consecutively to any sentence imposed in a revocation matter pending in Louisiana state court at that time. ROA.17-30884.38-40.

As to the drug conduct, the court sentenced Douglas to 192 months, the lower end of the 188-235 month range.   The court noted it had

considered the defendant's role in the offense, his personal characteristics, and his criminal history. The court similarly ordered Douglas to serve that sentence consecutively to any state revocation sentence that might be imposed. ROA.17-30884.42-43.

The court further ordered that Douglas serve 96 months of this sentence concurrently with the sentence imposed for the kidnaping conduct, and 96 months consecutively to that sentence. It specifically justified that decision on the ground the crimes were unrelated with "no commonalities of fact," and in light of the government's recommendation regarding concurrent sentences. The court noted "considerable consideration [had] gone into not making this sentence 100 percent consecutive to the other sentence, which … is what the guideline would tell [the court] is the presumed way to handle such a matter." The court stated it had instead "used its discretion" in imposing a partially concurrent sentence instead. ROA.17-30884.40-41, 43-44. The defendant did not contemporaneously object to the sentence imposed on any grounds. ROA.17-30884.47.

Judgment in each case was entered on October 26, 2017, rendering Douglas' notices of appeal, both filed on November 7, 2017, timely. ROA.17-30884.18, 17-30890.35.

## SUMMARY OF THE ARGUMENT

This Court should dismiss the appeal of the substantive reasonableness of the sentence imposed on the kidnaping charge, as that appeal is barred by an appeal waiver in Douglas' plea agreement. Douglas does not contend otherwise in his brief.

Alternatively, particularly in light of the applicable plain error standard of review, the defendant has not rebutted the appellate presumption of reasonableness applicable to either of his within-guideline sentences on appeal. The advisory ranges for both sets of conduct account for highly relevant, case-specific considerations, including the defendant's status as a career offender, the violent nature of his kidnaping offense, and the particular circumstances of his drug offense. Though the defendant disagrees with the way the district court balanced those considerations and the factors identified by him in mitigation of sentence, that kind of disagreement is insufficient to overcome the appellate presumption of reasonableness.

Further, the district court's decision to order that he serve those sentences partially consecutively to each other, and fully consecutively to an anticipated state court revocation sentence, is reasonable under the plain error standard. First, with regard to the court's decision to order Douglas to serve his federal sentences consecutively to any state court revocation sentence, that decision is consistent with the advice of the guidelines, and so it is presumptively reasonable. Again, Douglas' mere disagreement with the way the court balanced the sentencing factors cannot overcome that presumption.

Finally, with regard to the district court's decision to order Douglas to serve the sentences on the two instant counts of conviction partially consecutively, even assuming for purposes of argument that decision was not consistent with the advice of the guidelines, the resulting sentence is still substantively reasonable, particularly in light of the plain error standard. The district court expressly justified that decision based on the fact that the two sets of conduct were totally unrelated. This is a relevant consideration under § 3553(a)(1), as it concerns the "facts and circumstances of the offense," and this Court has long recognized that

consecutive sentencing is an appropriate mechanism for imposing distinct punishment for separate criminal acts.

## ARGUMENT

**I.    Douglas' challenge to the substantive reasonableness of his 324-month sentence on the kidnaping charge is barred by the waiver provision in his plea agreement. Alternatively, particularly in light of the applicable plain error standard of review, the defendant has not rebutted the appellate presumption of reasonableness applicable to either of his within-guideline sentences on appeal.  Further, the district court's decision to order that he serve those sentences partially consecutively is reasonable under the plain error standard.**

## A.    Standard of Review

If the defendant preserves an objection to the substantive reasonableness of his sentence in the district court, the court of appeals reviews that sentence under the abuse of discretion standard.  *United States v. Diehl*, 775 F.3d 714, 724 (5th Cir.2015).  That process is "highly deferential" to the district court, "because the sentencing court is in a better position to find facts and judge their import under the § 3553(a) factors with respect to a particular defendant."  *Id.*

However, if, as in this case, the defendant fails to contemporaneously object to the reasonableness of his sentence, review is for plain error only. *United States v. Heard*, 709 F.3d 413, 425 (5th Cir. 2013) (recognizing the defendant does not preserve an objection to the substantive reasonableness of his sentence merely by objecting to the PSR or requesting a below-guidelines sentence). To prevail under that standard, a defendant must show clear or obvious error that affected his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). Even then, this Court should only correct the error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 135. "Meeting all four prongs is difficult, as it should be." *Id.*

## B.   **Applicable Substantive Law**

### 1.   *Appeal waiver*

An appeal waiver bars an appeal if the waiver (1) was knowing and voluntary; and (2) applies to the circumstances at hand, based on the plain language of the agreement. *United States v. Bond*, 414 F.3d 542, 544 (5th Cir.2005). The government bears the burden of establishing that the plea agreement clearly and unambiguously waives the

defendant's right to appeal. *United States v. Powell*, 574 F. App'x 390, 394 (5th Cir. 2014).

## 2.    *Substantive reasonableness*

As the Supreme Court made clear in *Booker*, the substantive reasonableness of a particular sentence must be gauged with reference to the factors set forth in 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220, 261 (2005) ("Section 3553(a) remains in effect and sets forth numerous factors that guide sentencing. Those factors will in turn guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."). Among the considerations specifically listed in § 3553(a) are the facts and circumstances of the offense, and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1).

If the district court imposes a sentence within the properly calculated guidelines range, the court of appeals "give[s] great deference to that sentence" and "infer[s] that the judge has considered all the factors for a fair sentence set forth in the Guidelines in light of the sentencing considerations set out in § 3553(a)." *United States v. Campos-Maldonado*, 531 F.3d 337, 338 (5th Cir. 2008) (internal quotation marks and citation omitted). In this circuit, a sentence imposed within the

advisory range is entitled to a presumption of reasonableness on appeal. *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009).

### 3.    *Consecutive versus concurrent sentences*

A district court may impose consecutive, concurrent, or partially concurrent terms of imprisonment on multiple counts of conviction and must consider the factors set forth in § 3553(a) in deciding whether to do so.  18 U.S.C. §§ 3584(a) and (b).   The district court has the discretion to order that a defendant serve his instant federal sentence consecutively to an anticipated, though not-yet-imposed, state sentence.   *Setser v. United States*, 566 U.S. 231, 244 (2012).

Under the commentary to U.S.S.G. § 5G1.3, in cases in which the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense and has had such probation, parole, or supervised release revoked, "the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation."   U.S.S.G. § 5G1.3, Application Note 4(C).  A consecutive sentence that is consistent with the advice of the guidelines is entitled to a presumption of reasonableness, as it is a "guideline

sentence." *United States v. Ronquillo*, 508 F.3d 744, 750 n.6 (5th Cir. 2007).

## C.    Application of the Law to the Record

Douglas argues, for the first time on appeal, that the sentences imposed on the kidnaping conduct and the drug conduct are substantively unreasonable. Specifically, he contends the district court, in imposing within-guideline sentences, failed to account for various factors in mitigation of sentence, including his family support, his remorse, and his need for education and job-training. Further, Douglas argues that even if those sentences are reasonable, the court's decision to order that he serve them partially consecutively to each other, and consecutively to any state court revocation sentence, is not. Douglas' challenge to his sentence on the kidnaping conduct is barred by an appellate waiver in his plea agreement. Even if it is not, Douglas has not rebutted the presumption that the sentence imposed on either set of conduct is reasonable, nor has he demonstrated that the court's decision to impose partially consecutive sentences was unreasonable.

### 1.   *Appellate waiver*

In his plea agreement concerning the kidnaping conduct, Douglas "waive[d] the right to appeal the conviction, sentence, fine, order of restitution, or order of forfeiture in this case on all grounds …," except he "reserve[d] the right to appeal any punishment imposed in excess of the statutory maximum."   ROA17-30884.51.   That plea agreement was reduced to writing and signed by Douglas and his attorney.   Above Douglas' signature on the agreement is his acknowledgment that he had "read or had read to [him] this plea agreement"; that he had "carefully reviewed every part of it with [his] attorney"; and that he "fully under[stood] it and voluntarily agree[d] to it."   ROA.52.

As Douglas' sentence on the kidnaping conduct did not exceed the statutory maximum penalty of life in prison, the agreement expressly applies to the claim Douglas presents on appeal as to the sentence for the kidnaping conduct.   Douglas does not contend otherwise in his brief.   Accordingly, the waiver provision applies, and that claim is not subject to review.[4]   *Bond*, 414 F.3d at 544 ("Bond does not allege, and there is no

---

[4] Douglas does not address the appeal waiver at all in his brief, thus he does not deny that he freely and voluntarily waived his right to appeal the kidnaping sentence, or that the waiver provision bars review of that sentence.   Further, he failed to request transcription of the proceeding at which he was examined regarding the

indication in the record, that his ratification of the plea agreement was anything but voluntary. Because he indicated that he read and understood the agreement, which includes an explicit, unambiguous waiver of appeal, the waiver was both knowing and voluntary.").

### 2.    *The reasonableness of the within-guideline sentences*

Alternatively, even if Douglas' challenge to his sentence on the kidnaping conduct is not foreclosed by the appellate waiver, both that within-guideline sentence, and the within-guideline sentence on the drug conduct, are substantively reasonable.    As noted above, the defendant filed a pre-sentencing memorandum in which he asserted that the advisory ranges, though correctly calculated, overstated the seriousness of his criminal history, and failed to account for his family ties, his need for education and job-training, and the extent of his remorse.    He further argued a guideline sentence on the kidnaping conduct would result in sentencing disparity, as Mitchell and Robinson had received much lower sentences in the Eastern District of Texas.    ROA.17-30890.125.

---

voluntariness of his guilty plea.    To the extent the transcript of that proceeding is necessary to refute the voluntariness of the waiver, this Court may decline to consider that issue. *See Richardson v. Henry*, 92 F.2d 414, 416 (5th Cir. 1990) (dismissing that portion of the appeal governed by transcripts the appellant failed to designate as part of the record on appeal).

At the sentencing hearing, defense counsel reiterated these arguments orally, also requesting a sentence at the low end of the advisory ranges, and that the court order that the sentences on the two sets of conduct be served concurrently with each other, and with any state revocation that might be imposed.   The court also listened to a personal allocution statement from the defendant and noted it had considered 15 letters submitted on his behalf by various family members and friends.   ROA.17-30884.28-33, 36-37.

Thereafter, the court announced its sentencing decision, first as to the kidnaping conduct, then the drug conduct.[5]   As to the kidnaping conduct, the court specifically addressed the issue of sentence disparity, noting that Douglas' co-conspirators in the kidnaping case all had significantly lower criminal history scores than Douglas did:   Douglas was a Category VI offender, while no co-defendant in that case was

---

[5] Apparently believing the two cases should be treated separately for sentencing purposes, the drafter of the PSR did not apply the multiple count grouping rules included in U.S.S.G. § 3D1.1, et seq. to obtain a single, consolidated advisory range.   No party objected on that ground in the district court, and the defendant does not raise such a challenge on appeal.   Accordingly, any claim in that regard is waived. *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its initial brief on appeal.").   In any event, any such error benefitted the defendant, as application of those rules would have produced a combined range that was two offense levels higher. *See* U.S.S.G. § 3D1.4.

higher than a Category III offender. The court also noted that Douglas'
extensive criminal history—resulting in 20 criminal history points—
could justify an upward departure, particularly in light of the fact that
the violent nature of his record had escalated over time. Nonetheless,
the court had elected not to depart, since some of his convictions were for
less serious offenses. ROA.17-30884.38-40. As to the drug conduct, the
court stated it had considered the defendant's role in the offense, his
personal characteristics, and his criminal history. ROA.17-30884.38.

The advisory ranges for both sets of conduct account for highly
relevant, case-specific considerations. Those include the defendant's
criminal history, including his status as a career offender; the violent
nature of his kidnaping offense, including the fact that it involved the use
of a weapon and resulted in serious bodily injury to the victim; the
quantity of methamphetamine involved in the drug offense; and the
fact that the drug offense also involved the sale of a firearm. ROA.17-
30884.71-80, 17-30890.83-92. A within-guideline sentence effectuated
these important considerations. *Rita v. United States*, 551 U.S. 338, 350-
51 (2007) (noting the appellate presumption of reasonableness "simply
recognizes the real-world circumstance that when the judge's

discretionary decision accords with the Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable").

Further, the record confirms that the district court, which considered the PSRs, the defendant's sentencing memorandum, the letters submitted on his behalf, and the statements offered by him and his attorney, implicitly considered all the factors offered by Douglas in mitigation of sentence. *See e.g., United States v. Sanchez*, 667 F.3d 555, 568 (5th Cir. 2012) (affirming the defendant's sentence because the record showed that the court "had before it at the sentencing hearing the PSR and [the defendant's] objections to the PSR, as well as [the defendant's] sentencing memorandum," and then heard the defendant's arguments before imposing a within-guidelines sentence); *see also, United States v. Rodriguez*, 521 Fed. App'x 313, 316 (5th Cir. 2013) (rejecting Rodriguez's claim that the district court failed to adequately consider the § 3553(a) sentencing factors when imposing sentence; the PSR, sentencing memoranda, and statements by counsel and Rodriguez during the sentencing hearing alerted the district court to the nature and circumstances of the instant offense, Rodriguez's history and

characteristics, his criminal history, and other relevant sentencing considerations).

At bottom, the record reflects Douglas' mere disagreement with the manner in which the court balanced the various sentencing considerations. As this Court has recognized, that kind of disagreement cannot overcome the presumption of reasonableness that applies to his within-guideline sentence on appeal. *See United States v. Alvarado*, 691 F.3d 592, 597 (5th Cir. 2012) (finding no abuse of discretion in the district court's decision to sentence Alvarado within the advisory range in spite of the parties' agreement that his case was atypical; the record reflected that the district court considered all mitigating factors identified by the defendant as well as the § 3553(a) factors, and "Alvarado's mere belief that the mitigating factors presented for the court's consideration should have been balanced differently is insufficient to disturb [the] presumption [of reasonableness]" that applied to his within-guideline sentence on appeal).

### 3.    *Decision to impose partially consecutive sentences*[6]

In his argument in mitigation of sentence, Douglas also urged the court to order that the sentences on the kidnaping and drug conduct be served concurrently, both with each other, and with any sentence imposed in a pending state court revocation proceeding.    ROA.17-30884.32-33.  The government, in keeping with its promise to do so in the plea agreement, recommended concurrent sentences as well.  ROA.17-30884.25-26, 34.

The court, at least in part, rejected those suggestions, however, ordering that Douglas serve 96 months of the 192-month sentence on the drug conduct consecutively to the sentence on the kidnaping conduct, and half of the sentence concurrently with it.   The court further ordered Douglas to serve his federal sentences consecutively to any sentence imposed by a state court in a pending revocation proceeding. ROA.17-30884.40-41, 43-44.  The court noted that aspect of its sentencing selection was "the toughest decision in this matter."  It observed that the two criminal episodes "occurred in two separate states at two separate

---

[6] Because the district court's order requiring consecutive sentences appears in both judgments, and because only the plea agreement addressing the kidnaping conduct included an appeal waiver, the reasonableness of the court's decision to impose consecutive sentences is properly before this Court.

times," and thus there were no "commonalities of facts" between the two. ROA.17-30884.40. In spite of that, the court had decided to "use[ ] its discretion" and the "flexibility" afforded by the guidelines to impose partially consecutive sentences, rather than fully consecutive ones. ROA.17-30884.43-44.

First, with regard to the court's decision to order Douglas to serve his federal sentences consecutively to any state court revocation sentence, that decision is consistent with the advice of the guidelines. U.S.S.G. § 5G1.3, Application Note 4(C) (noting that in cases in which the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense and has had such probation, parole, or supervised release revoked, "the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation"). A consecutive sentence that is consistent with the advice of the guidelines is entitled to a presumption of reasonableness, as it is a "guideline sentence." *Ronquillo*, 508 F.3d at 750 n.6. The defendant's suggestion that the relevant factors should have been balanced differently does not overcome that presumption. *United States v. Medlock*, 619 F. App'x 386, 387 (5th Cir. 2015) (affirming

a consecutive sentence consistent with the guidelines where "[t]he district court was aware of the mitigating circumstances offered by Medlock and explicitly took some of them into account in selecting the sentence," but ultimately "gave more weight to Medlock's personal and criminal history and characteristics" in ordering consecutive sentences).

Finally, with regard to the district court's decision to order Douglas to serve the sentences on the two instant counts of conviction partially consecutively, even assuming for purposes of argument that decision was not consistent with the advice of the guidelines,[7] the resulting sentence

---

[7] As noted above, the probation officer treated the two charges as two separate cases, preparing separate PSRs on each. The district court also treated them as separate cases, sentencing the defendant first on the kidnaping charge, and then on the drug charge, and ordering the defendant to serve those sentences partially consecutively. In arriving at that decision, the district court operated under the belief the guidelines counseled in favor of consecutive sentences as to the two charges. It expressly noted as much at the hearing, though it never cited a relevant provision of the guidelines, and both PSRs were silent on that issue. ROA.17-30884.25, 40, 43-44. It is unclear whether the district court was correct in this regard. If sentencing on the two sets of conduct was governed by U.S.S.G. § 5G1.2, which addresses "multiple counts of conviction," then the guidelines would recommend concurrent sentences, as the statutory maximum on the kidnaping charge was "adequate to achieve the total punishment." U.S.S.G. § 5G1.2(c). At least one circuit court has applied § 5G1.2 in a case, like this one, in which a defendant was sentenced in the same proceeding on charges included in separate indictments, one of which originated in another district. *See United States v. Herula*, 464 F.3d 1132, 1136–37 (10th Cir. 2006) (citing Application Note 1 to § 2D1.2, which provides that section is applicable to "multiple counts of conviction … contained in different indictments or informations for which sentences are to be imposed at the same time or in a consolidated proceeding," and noting it is "seldom applied and, unsurprisingly, there is a dearth of case law interpreting it"). However, if the two sets of conduct were considered "undischarged sentences" relative to each other, then they would be covered by

is still substantively reasonable, particularly in light of the plain error standard.   As noted above, the district court expressly justified that decision based on the fact that the two sets of conduct were totally unrelated.  ROA.17-30884.40-41.  This is a relevant consideration under § 3553(a)(1), as it concerns the "facts and circumstances of the offense." Further, this Court has long recognized that "consecutive sentencing is an appropriate mechanism for imposing distinct punishment for separate criminal acts, and … a defendant has no right to have concurrent sentences imposed for two totally unrelated offenses."  *United States v. Olivares-Martinez*, 767 F.2d 1135, 1137 (5th Cir. 1985) (collecting Fifth Circuit and Supreme Court authority).

This Court has affirmed consecutive sentences where, as here, the district court justified them in light of lawful considerations.  *United States v. Freeman*, 710 F. App'x 193, 194 (5th Cir. 2018) (affirming the

---

U.S.S.G. § 5G1.3, which would equally recommend concurrent, partially concurrent, or consecutive sentences, at the court's option.  U.S.S.G. § 5G1.3(d); *see also*, U.S.S.G. § 5G1.3, Application Note 4(D) (noting, in a "complex case in which a defendant may be subject to multiple undischarged terms of imprisonment that seemingly call for the application of different rules," that the court should "exercise its discretion … to run [the sentences] in any appropriate manner to achieve a reasonable punishment for the offense").  As the defendant does not challenge any aspect of the district court's guideline calculations on appeal, including its determination regarding whether the guidelines recommended consecutive sentences, that issue is waived.  *Cinel*, 15 F.3d at 1345.

district court's decision to order the defendant to serve his sentence for a SORNA violation consecutive to his sentence for violating a prior term of supervised release that had also been imposed for a failure-to-register conviction; "Having reviewed the district court's thorough justification of the sentences it imposed, we conclude that Freeman's disagreement with the district court's weighing of the sentencing factors is insufficient to demonstrate an abuse of discretion."); *United States v. Garnica*, 471 F. App'x 368, 370 (5th Cir. 2012) (affirming a consecutive sentence, where the record reflected the district court was aware of factors in mitigation such as her medical history and family responsibilities but opted to impose a 120-month consecutive sentence on one count of conviction because the defendant had engaged in repeated criminal acts while employed as a border patrol officer); *United States v. Farjado*, 469 F. App'x 393, 396 (5th Cir. 2012) (affirming consecutive sentences based on the nature of the identify theft offenses and the defendant's under-represented criminal history; "In support of its sentencing decision, the district court provided detailed reasons based on the § 3553(a) factors," and "the [district] court was 'in a superior position to find facts and judge their import under § 3553(a),'" *quoting Gall v. United*

*States*, 552 U.S. 38, 51 (2007)).  Particularly in light of applicable plain error standard of review, the district court's decision to impose partially consecutive sentences is substantively reasonable.

## CONCLUSION

The court of appeals should dismiss the appeal of the substantive reasonableness of the sentence imposed on the kidnaping charge, as that appeal is barred by an appeal waiver in Douglas' plea agreement. Douglas' sentence on the drug charge should be affirmed in all respects.

Respectfully submitted,

ALEXANDER C. VAN HOOK
United States Attorney


BY:   *s/ Camille A. Domingue*

CAMILLE A. DOMINGUE (#20168)
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501
(337) 262-6618

## CERTIFICATE OF SERVICE and
## COMPLIANCE WITH ECF FILING STANDARDS

I hereby certify that a copy of the foregoing Brief on Behalf of Appellee, The United States of America, was filed electronically with the Fifth Circuit Court of Appeals using the electronic filing system. Notice of this filing will be sent to counsel of record either by operation of the court's electronic filing system and/or via United States Mail to:

Mr. T. Taylor Townsend
320 St. Denis
Natchitoches, LA 71458

Ms. Nichole M. Buckle
STROUD, CARMOUCHE & BUCKLE, P.L.L.C.
7330 Fern Avenue, Suite 903
Shreveport, LA 71105.

In addition, I hereby certify that: (1) all required privacy redactions have been made pursuant to 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document pursuant to 5th Cir. R. 25.2.1; and, (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Lafayette, Louisiana, this the  28th  day of March, 2018.


BY:  *s/ Camille A. Domingue*
CAMILLE A. DOMINGUE (#20168)
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501
(337) 262-6618

## CERTIFICATE OF COMPLIANCE

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   (a)   This brief contains **6,726** words.

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   (a)   This brief has been prepared in a proportionally spaced typeface using:

   Software Name and Version – **Microsoft Word 2016**;

   in Typeface Name and Font Size - **Century Schoolbook 14 pt.**

*s/Camille A. Domingue*

CAMILLE A. DOMINGUE (#20168)
Assistant United States Attorney

March 28, 2018
Date